**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595

**Jared Sutton** (State Bar No. 028887)
Direct Dial: 602.262.0259
Direct Fax: 602.734.3924
E-mail: jsutton@lrrc.com

**Jennifer Lee-Cota** (State Bar No. 033190)
Direct Dial: 602.262.5368
Direct Fax: 602.734.5747
E-mail: jleecota@lrrc.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., an Arizona non-profit corporation,<br><br>                    Plaintiff,<br><br>   vs.<br><br>2245883 Ontario, Inc., an Ontario corporation; Kareem Eusoph Sethi and Jane Doe Sethi, husband and wife,<br><br>                    Defendants. | No.<br><br>**COMPLAINT** |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against Defendants 2245883 Ontario, Inc. ("Ontario"), Kareem Eusoph Sethi, and Jane Doe Sethi, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff Best Western is a non-profit corporation organized under the laws of the State of Arizona with its headquarters located in Phoenix, Arizona.

2.     Defendant Ontario is an Ontario corporation with its principal place of business in Toronto, Ontario. Defendant Ontario owns the hotel located at 808 Mount Pleasant Road, Toronto, Ontario (the "Hotel"). The Hotel, which was independently owned and operated, was known as the Best Western Roehampton Hotel & Suites.

3.     Defendant Kareem Eusoph Sethi ("Sethi") is a resident of Toronto, Ontario, and was designated as the Voting Member for the Hotel. As the Voting Member, he

agreed to be personally liable for all of the obligations owed to Best Western.

4. Defendant Jane Doe Sethi is Kareem Eusoph Sethi's spouse and is a resident of Toronto, Ontario. She is named for community property purposes.

5. Pursuant to the Best Western Membership Agreement ("Membership Agreement"), executed by Defendant Ontario on August 9, 2010, Defendants agreed that all disputes arising from or related to the membership application process, the membership agreement, or termination of membership shall be resolved exclusively in the state or federal courts in Maricopa County, Arizona.

6. This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because: (1) Best Western is an Arizona non-profit corporation with its principal place of business in Phoenix, and its witnesses are either located in Phoenix or available in Phoenix; (2) Defendants are citizens of Toronto, Ontario; (3) the amount in controversy exceeds $75,000.00; (4) there are no matters pending between the parties in any other jurisdiction; and (5) Defendants executed a contract that contained a forum-selection clause requiring all disputes arising from or related to that contract to be resolved by an Arizona state or federal court according to Arizona law.

7. The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, Defendants expressly agreed to litigate all disputes with Best Western arising from or related to their contract with Best Western, or any relationship between the parties, in the state or federal courts located in Maricopa County, Arizona

**GENERAL ALLEGATIONS**

8. Best Western is a hotel-industry, service organization that operates on a cooperative basis by and for its hotelier members, which are independent owners and operators of Best Western® branded hotels.

9. Best Western provides its members with a reservation system and marketing campaigns, as well as an option to participate in collective purchasing of hotel

1  equipment, furnishings, and supplies (the "Best Western Services"), among other services
2  that members can elect to purchase.

3      10.    The rights and obligations of Best Western's members are determined by
4  the membership and are set forth in the Membership Agreement, Best Western's Bylaws
5  & Articles (the "Bylaws"), Best Western's Rules and Regulations (the "Rules and
6  Regulations"), and other Best Western "Regulatory Documents," as that term is defined
7  in Best Western's Bylaws (collectively the "Regulatory Documents"), which includes
8  resolutions and policies adopted by the Board from time to time.

9      11.    In exchange for receiving the Best Western Services, Best Western
10 members are obligated to, among other things, pay annual dues, monthly fees, fees for
11 services, membership fees, and other assessments or charges and to abide by all
12 obligations as may be established from time to time in the Bylaws and Rules and
13 Regulations, which are expressly incorporated by reference into the Membership
14 Agreement. *See* Ex. A, Membership Agreement at ¶¶ 11-12.

15     12.    The membership fees are due December 1 of each year but are billed, as a
16 courtesy to members, in monthly installments over the course of the following year.

17     13.    Annual dues are charged in August of each year. All other dues, fees and
18 assessments are billed monthly.

19     14.    Pursuant to Best Western Bylaws Article II, Section 5 (B), "if the Member
20 resigns or is terminated, all fees, dues, and charges for the remainder of the fiscal year . . .
21 become immediately due and payable." *See* Ex. B, Bylaws Article II, Section 5(B).

22     15.    Each Best Western member is authorized to use the trade name, trademarks,
23 service marks, logos, and other intellectual property and similar identifying symbols
24 owned by Best Western in connection with its hotel pursuant to a limited, non-exclusive
25 license (the "Best Western License"), which is set forth in the Membership Agreement.
26 *See* Ex. A, Membership Agreement at ¶ 20.

27     16.    The Membership Agreement and Regulatory Documents establish the
28 minimum standard quality assurance scores and requirements that each member must

3

meet to achieve and maintain membership.

17.    If a member defaults on certain obligations, including those set forth in the Membership Agreement and Regulatory Documents, the Best Western Board of Directors may terminate the membership and the Best Western License.

18.    The Membership Agreement and Regulatory Documents establish that the membership may be, among other reasons, cancelled should a member fail to "comply with the terms and condition or to meet the standards as set forth in the Regulatory Documents," *see* Exhibit B, Article II, Section 8(A)(2), and upon the Members' default of any obligation to Best Western, as more fully set forth in the Bylaws, Rules and Regulations, and Regulatory Documents. *See*, *e.g.*, Ex. C, Rules and Regulations, Ch. XII.

## DEFENDANTS' BEST WESTERN MEMBERSHIP

19.    Defendant executed a Membership Application and Agreement on August 9, 2010. At the time, Chris Hales was designated voting member.

20.    On August 4, 2017, Kareem Eusoph Sethi replaced Chris Hales as Voting Member. As the new Voting Member, Defendant Sethi agreed to "be bound by the Membership Application and Agreement executed in connection with" the Hotel. *See* Ex. D, Application for Change in Voting Member.

21.    Having accepted designation as the Voting Member, Defendant Sethi agreed to meet Best Western membership requirements, and agreed to be personally liable for the responsibilities of the Hotel's Best Western affiliation, including the Membership Agreement and Regulatory Documents.

> I certify that the above information in this section is true and correct. I have received, read, understand and agree to be bound by the Membership Application and Agreement executed in connection with the above-referenced property, as though fully restated and re-executed by me on this date. I understand that the voting member is personally liable for all Best Western obligations. I consent to the use of the email address(es) and facsimile number(s) given above by Best Western to send me commercial and promotional messages, and other information relating to Best Western, as part of an existing and ongoing business relationship. This consent also applies to email address(es) and facsimile number(s) that I or the property's staff may give to or use with Best Western in the future. I authorize Best Western to send email messages and facsimiles to the full extent permitted by current law and in the future, without any additional authorization. I reserve the right to withdraw this consent at any time by informing Best Western in writing.
>
> Signature (Do not use a title)            Date  August 4, 2017

22. Through the Membership Agreement and Regulatory Documents, Defendants agreed to timely pay all fees, dues, charges, and assessments imposed generally on the membership and to promptly pay the costs of all goods or services provided by or ordered through Best Western, including that past due amounts would bear interest 1.5% per month from the date due until paid. *See* Ex. A, Membership Agreement at ¶ 12.

23. The Regulatory Documents, which are incorporated by reference into the Membership Agreement, set forth certain brand standards to which Best Western members must adhere or risk termination of the membership. *See* Ex. C, Rules and Regulations, Rule 1100.6.

24. On February 19, 2018, Defendants were notified that the membership was in jeopardy of termination for non-compliance with the standards in the Regulatory Documents. Defendants were notified of their right to request a hearing before Best Western's Board of Directors to discuss the matter.

25. On February 22, 2018, Defendants requested a hearing before Best Western's Board of Directors.

26. On April 24, 2018, Mr. Sethi attended the hearing and made a presentation to the Board.

27. Prior to the hearing, Best Western sent Defendants a hearing packet which contained the Hotel's assessment history, a summary of previous attempts to resolve the Hotel's deficiencies, and a copy of prior correspondence regarding the Hotel's failure to comply with Best Western Regulatory Documents.

28. After considering the matters discussed and the information provided at the Hearing, Best Western's Board of Directors voted to cancel Defendants' membership.

29. Defendants' were informed that their membership had been cancelled by phone either on April 27, 2018, or April 30, 2018, and by letter dated April 30, 2018. *See* Ex. E, 4/30/18 Letter.

30. The termination letter notified Defendants of their obligation to satisfy their

outstanding account balance as soon as possible.

31. The outstanding account balance includes fees for services provided to Defendants prior to the termination, in the amount of $49,931.22 Canadian Dollars ("CAD"), as well as contractual damages agreed by the parties to be paid upon early termination in the liquidated sum of $64,882.87 CAD.

32. The total account balance, with accrued interest, was $114,814.09 CAD ($87,476.17 USD) as of December 1, 2018.  *See* Ex. F, Invoices.

33. As of the date of this complaint, Defendants still have not paid Best Western for their outstanding account balance.

## **COUNT I – BREACH OF CONTRACT**

34. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

35. The Membership Agreement is a valid, binding and enforceable contract.

36. Defendants have refused and continue to refuse to pay to Best Western the amounts due and owing as required by the Membership Agreement.

37. Best Western fully performed its obligations under the parties' contract.

38. Defendants' performance under the parties' contract was not excused.

39. Pursuant to the express terms of the Membership Agreement, interest has accrued and continues to accrue on the unpaid amounts at 1.5% per month.

40. As December 1, 2018, there remains due and owing, by Defendants to Best Western, on the account, the sum of no less than $114,814.09 CAD ($87,476.17 USD), and that amount will increase because of the contractually-mandated interest.  The outstanding account balance includes fees for services provided to Defendants before termination in the amount of $49,931.22 CAD.  It also includes contractual damages agreed by the parties in the liquidated amount of $64,882.87 CAD.  *See* Ex. F, Invoices.

## **COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

41. Best Western incorporates by reference the allegations in the preceding

106529590_1
106529590_2

paragraphs as though fully set forth herein.

42. The Membership Agreement is a valid, binding, and enforceable contract.

43. The agreement contains an implied covenant of good faith and fair dealing.

44. Defendants' conduct, as described herein, constitutes a breach of the covenant of good faith and fair dealing.

45. As a direct and proximate result of Defendants' violation of the implied covenant, Best Western has suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Best Western International, Inc. seeks judgment against Defendants, jointly and severally, as follows:

A. An award to Best Western of its damages in an amount to be proven at trial;

B. Attorneys' fees and costs pursuant to the Membership Agreement, A.R.S. §§ 12-341 and 12-341.01, or any other applicable law;

C. Pre- and post-judgment interest; and

D. Any other relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 14th day of December, 2018.

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By:   /s/ Jennifer Lee-Cota
     Jared Sutton
     Jennifer Lee-Cota
     *Attorneys for Plaintiff*

106529590_1
106529590_2